All right, this is People's State of Illinois v. Erin McBride. Will the lawyers please approach and identify yourselves for the record? I just saw opposing counsel. I know she's here. My name is Michelle Katz. I'm an assistant state's attorney representing the people. That's okay. I'm sure you were waiting a good long time considering the first argument. I was with you. Why don't we then proceed with the appellant? Good morning, Your Honors. My name is Emily Filpe, and I represent Erin McBride in this matter. This case involves two closely related issues. The first is a reasonable doubt issue, and the second is the jury no instruction issue. I'm prepared to argue both of them. Is there any argument that you'd like me to begin with? Well, I think maybe you would be better served by starting with the first argument. Is that your view? That's an echo of Alice in Wonderland. Begin at the beginning. Yeah. Okay, the state charged McBride with violating subsection A3 of the aggravated vehicular hijacking statute, which requires that the individuals armed with a dangerous weapon other than a firearm. To prove aggravated vehicular hijacking under this subsection, the state must prove two things. That McBride was armed with a weapon other than a firearm, and that he was armed with a dangerous weapon. The state failed to prove both of these things. The state charged McBride under subsection A3. Well, I have a question, actually. Are you allowed to prove both things? Doesn't one preempt the other? The statute requires that it's a dangerous weapon other than a firearm. So, you're asking whether... Now, once there's a firearm interjected, can someone be convicted under A3 when there's possession of a firearm, when the dangerous weapon happens to be a firearm, even though A4 doesn't use the word dangerous weapon. It just uses firearm. But once there's a firearm, doesn't that preempt A4? And can you have a dangerous weapon under A3 that consists of a firearm? No, Your Honor, because... Because doesn't that build in a disproportionality right then and there? No, Your Honor, because of the specific language of the statute.  It's a dangerous weapon other than a firearm. Prior to 2000, prior to this amendment, it was unnecessary for the state to specify whether it was a firearm or not. But then the legislature specifically put in that language. And in this case, the state specifically, in the indictment, noted that it was charging under A3. And everyone proceeded with the knowledge that... Well, but can you charge a weapon under A3? And not have it be A4? Does the dangerous... Doesn't A3... Let's confront it from another way. A3 says a dangerous weapon other than a firearm. If you introduce a firearm, aren't you either at fatal variance, as the defendant here chose not to go? Or have you not been submitted sufficient evidence to sustain the charge, which is where the defendant chose to go? Correct. Well, the two subsections are mutually exclusive, as noted in Barnett. Are they mutually exclusive? For example, if a firearm is inoperable or unloaded and would only be susceptible to being used as a bludgeon, would that mean that if the bludgeon happened to be a firearm, that you couldn't consider it as such under A3? That would be correct, Your Honor. I mean, we have to go back to the language of the statute. Well, Ligon has a case in which the indictment read, armed with a dangerous weapon to wit a bludgeon, which turned out to be a firearm. But in our case, it doesn't say to wit a bludgeon. It says to wit a handgun. And if it's a handgun, is every... I suppose one question here is, is every handgun a firearm? Because if it is a firearm, doesn't A4 unqualifiably make a per se violation out of a firearm? There's a couple of things I wanted to say about that. First, Ligon is a BB gun case, and under the Firearm Identification and Owners Act, a BB gun is not a firearm. Well, we don't know what this gun was. All we know, we don't even know if it was a gun. We know it was a barrel. Correct. It was a barrel that caused some sort of scar when pressed against somebody's forehead. Correct. But again, we have to go back to the language of the statute, and it doesn't say a dangerous weapon other than those used as a firearm. It specifically says, other than a firearm, it goes to the type of weapon, not the manner of use of the weapon. What about the state's argument about the to wit language being nothing but surplusage? It's, in a sense, in their argument, a gratuitous further description of the dangerous weapon, which would be covered under A3. And there's case law about, for example, the case having to do with the two people who were endangered by the firing of a weapon, where the Supreme Court is, I think it was Ross, was it? Where the Supreme Court said that is... Followed the Ligon. Yeah, it was surplusage. Well, generally, the description of the weapon is surplusage. But in this case, it's not because the statute specifically says, other than a firearm. I mean, it might be surplusage if they said, you know, if they charged him with a dangerous weapon, a knife or something like that. It's not necessarily... Well, let me ask you this. I assume that there was never a question, but what the theory of the state was, because the description given by the victim was sufficiently vague. And so there was never a question beyond the description of something pressed against the victim's head and that a barrel was seen, that it was the surmise of this individual, that it was a firearm, but less than conclusive proof that it was a firearm. But whatever it was, it caused, at least under the state's theory, some damage because the victim came out of it with a little blood and with a bruise from the contact. And so under those circumstances, are we to say that because of the inaccuracy or the inability to be specific in the description of the implement that caused injury, that somebody gets a get-out-of-jail-free card? It's not a get-out-of-jail-free card. Well, it's a get-out-of-jail-sooner card. What I meant is that the state could have chosen to charge McBride under both A3 and A4, but instead the state chose to go forward with a one-count indictment under subsection A3. Well, let me ask you this. You've ducked the variance issue, right? No, I just don't think this is variance. Well, why isn't this... Why, if the state proceeds to establish that this was a firearm, would that be a fatal variance? This isn't variance at all, because variance is the disparity between the factual allegations and the charging instrument. Yeah, well, the charging instrument charges A3, which is a statute that precludes a firearm, even though the charge itself straddles, and somehow the state tries to explain it on the basis of that Howe-Heiser case being current at that time. But it straddles language from both provisions, but it cites to the provision that specifically excludes firearms. Okay. Now, so that there's an incompatibility between the number given for the... between the citation and the actual charge. There's further incompatibility because the charge intermingles the words armed dangerous weapon, which is an A3 provision, with the fact that it's a handgun, which doesn't contain any armed... Now, what happens to that? Isn't this utterly inextricably confused? This may be a softball to you, but I don't care which way the ball bounces. I'd like some clarification. It is confusing, Your Honor. But variance is different ways to commit the same offense. In this case, it's violating different statutes, you know, different... They're mutually exclusive subsections, mutually exclusive as noted in Barnett. You can't... And also, you have to keep in mind that everyone knew and understood that the state was proceeding under A3 the whole time. At sentencing, the court asked the state, you know, this is interesting the way you charged it. You know, why did you do it this way? And the state, A, confirmed that they did intend to charge it under A3, and B, they said they did it because they didn't have the firearm. And this is where they explain that the two-wit is not an element, but simply a surplusage. But then the question is raised, can it not be an element if that's what is, in fact, proven? Or does this case... Does the state's case... And I'm addressing this to you in the hopes that I'll get a response from the state. And if I were you, I wouldn't concede too quickly what you think is the momentum on your side, because there may be some questions coming up the other way, you know? But the question being, once you prove the handgun as being a handgun, then you're, again, in the never-never land of it being a fatal variance, so that the state's case involves, isn't it better off not being, as Justice Epstein points, alludes, not being able to prove that it's in either category other than something that leaves marks on somebody's head. And if that's enough to characterize it as dangerous, which is a whole other question. Correct. The state charged it under A3, and whether it says whatever type of weapon it does say under A3, we have to go to statute. And the state charged it under that particular section of the statute, and they have to prove that particular section of the statute. And they did not prove that it was something other than a firearm. Well, I suppose the test is not the ink that spells out the word. It's the sufficiency of the notice. And the question is, is there sufficient notice to a defendant here that he's in violation of A4, even though it's marked A3, if, in fact, he has to prove it's a gun? Well, Barnett is very instructive here. And in Barnett, the court specifically said that when the state charges with a particular subsection, that they have to prove that particular subsection. Barnett is actually kind of the opposite of this case here. So if it's surplusage, didn't they prove that subsection? Didn't they prove that there was some object which was dangerous? And since nobody was under the misconception about the lack of clarity of what it was that was the object, how is the defendant put at any disadvantage by the surplusage of a firearm? He's put at a disadvantage because the state has to prove that it's a dangerous weapon other than a firearm. We can't just eliminate those words. Well, but the charge says to win a handgun. Isn't that sufficient reassurance to a defendant that if he's found to have a handgun, he's on the hook, and consequently to prepare a defense? For A3. For a handgun. But they charge it under specifically A3. And again, I direct you to look at Barnett, which notes that it's the specific type of subsection charge. And if it's not charged, the defendant cannot be convicted of it unless it's a lesser included offense. And in this case, A3 and A4 are mutually exclusive by their own language, by their own terms. If it was used in the nature of a firearm by firing a projectile which caused the injury, to the individual, wouldn't that be a stronger case? Because there you would actually be relying on the fact that it was, the item was something which did what a firearm is supposed to do. It's supposed to be able to be used to eject a projectile that causes damage to someone. Here, regardless of what you call it, the injury that occurred, assuming the state proved that part of it, was through something that would not be magical or would not be specific to a handgun, but could be to almost anything with any weight. Again, Your Honor, it doesn't say other than something used as a handgun. It's very specific. It says other than a handgun. The statute before the amendment just said armed with a dangerous weapon. And then after January 1st, 2000, the legislature made it very clear that for A3 it's other than a firearm. Do you think they were trying to create this issue or do you think they sort of blundered into it? I do think they blundered into it. But it comes down here to the fact that the state chose to proceed on a one-count indictment and chose only to charge him under A3 having the statute in front of them. It's not like they didn't know what A3 was. Does a handgun under the current post-2000 amendment under A4 have to be shown to be dangerous other than the fact that it's a handgun? No, under A4 it just says armed with a firearm. No, what happens to the Ross classifications under the current A4? Ross was a post-amendment case. What happens there with those? And if so, how does the requirement that it be a dangerous weapon, how does it creep in to the provisions of A4 which simply, blandly, requires only that it be a firearm? Once you prove that it's a firearm, whatever that is, and that may be something very mystical, I don't know. Had the state charged under A4, they would not have to prove that it was a dangerous weapon. But since the state elected to proceed under A3, they have to prove that it's a dangerous weapon. And the other part of it is that that dangerous weapon cannot be a firearm. Once the dangerousness is enunciated in the charging instrument itself, the fact that the statute may not require the dangerous weapon will not preclude the defendant from requiring proof that it's dangerous. Is that right? You're saying if it just said a dangerous weapon, a firearm, but did not have a specific subject? No, even though A4 does not require proof that it's dangerous, if A3, under which he's charged, or if the charging instrument recites the fact that it has to be a dangerous weapon to witness, the state would have the burden of showing both. It's not the words in the indictment. It really goes back to what they charged and what the statute requires for that. The words of the indictment is what they charged. But they bundled it in the sense that they let out the language. What happens? Well, if they had charged a two-count indictment, this wouldn't be a problem if they had charged it under both A4 and A3. However, since they only proceeded under A3, they have to be able to show that it was something other than a firearm. What about a situation like this where nobody knows really what it was? They charge it both ways. The jury finds that there was sufficient proof to make it a handgun. And a reviewing court said, no, you guessed wrong, jury, because although it caused serious injury, we find that there was not sufficient proof to say it was a handgun. And you acquitted a jury on the dangerous weapon part of it. Isn't that an anomalous result? Because if the jury was of the belief that whatever it was, it was a dangerous weapon because it caused serious injury to an individual, then they're put in this very tough situation of trying to fit it into Category 1 or Category 2 at their peril. Is there a case actually that offers up precisely that situation where the jury finds it's a dangerous weapon and makes another finding that it's not a handgun? That's Barnett that I've been talking about. It's the opposite here. And the court again there said, well, you charged it under the firearm provision. You didn't find that it was a firearm. You found it under the dangerous weapon provision. That's what the jury decided. Well, can't you argue that here the jury found that the state didn't prove that there had a firearm, but instead they had maybe a gun of some type but it wasn't a firearm? In this case? Yeah, well, in this one. In this case? There's only a barrel. And the state didn't prove, you aren't arguing that the state proved they had a firearm, are you? No, I'm saying that they didn't have evidence that it was other than a gun. It seems here that if the jury would find that it's not a handgun, that makes it easy for the state. Because then everything else that is dangerous when it's used is a dangerous weapon other than a handgun. The problem, if anything, would arise if the jury didn't spell out what they found. Then you'd have to say, well, either way, there are statutory provisions that impose guilt. But then we're left with the question, well, maybe they imposed the guilt because they found it was a firearm. In which event, we'd have to determine whether there's a fatal variance here because the statute that's charged is the wrong one for firearms. And that doesn't seem to trouble the defendant at all. Because you're not focused on whether there's a variance. You're simply focused on the fact that there is no insufficient proof of A3. But I wonder how genuine that is  Only has its impact if the proof that would satisfy A4 would be a fatal variance. Otherwise, there's no deficiency in the proof because you're not proving, perhaps, that it's not a handgun. But then if you're not proving that it's not a handgun, you can prove that it is a handgun and be liable there without even the prerequisite that it be otherwise dangerous. I mean, this is a case out of Never Never Land. The state charged it under the subsection and they have to meet these elements, these parts of the subsection. And if they don't, like under Barnett, there's no conviction under A3. This isn't a variant situation because everyone understood that they were proceeding under A3. And the state charged them with a dangerous weapon with a handgun. Well, if it's going to be under A3, the only way to prove A3 would be to show that this handgun is not a firearm. And the question is, is it enough to take a Luger or something that is conventionally a firearm but to use it as a blackjack and by using it as a blackjack to satisfy A3 even though that blackjack is a handgun? Your Honor, I believe that's reading outside the language of the statute. I mean, it says other than. It doesn't say used in a different manner. It goes to the type of weapon. Also, the state didn't prove that McBride was carrying a dangerous weapon. Illinois courts recognize three categories. But if it's a handgun, if it's a firearm under A4, doesn't it have to be dangerous or does it? Under A4, no, but that's not what the state charged here. They charged A3. But they charged A3 with a caveat, comma, a handgun. And in the cases where the court has found that that goes down to A4, it's a general. It doesn't specify the subsection A3 numerically. And in this case, the state numerically specifies that subsection. It's clear that they intended A3 here. And dangerous weapons, there's three types. Ones that are dangerous per se, such as loaded guns. Objects that are not necessarily dangerous but may become dangerous when used in a dangerous manner. And objects that are used in a dangerous manner. Well, that's questionable, whether the Ross standards apply. Because earlier, you seemed to agree that under A4, it's a per se requirement, whatever it is, as long as it's a firearm. But this is under A3, which I have to prove. But under A3, the proof of those three categories won't matter. Because A3 specifically excludes anything that's a handgun. But the dangerous weapon categorizations are for dangerous weapons. It's not for determining... Well, the dangerous weapons under A3 include handguns when they are not used as handguns, when they're used as black jets. The Ross standards, the three different types of weapons, could. But in terms of the statute itself, which specifically excludes that type of weapon, no. I mean, you have to look to these categories of dangerous weapons to determine whether it is a dangerous weapon. And then you look and see if they prove that it was a dangerous weapon and that if it was something other than a firearm. Here, Criswell only specifies that he sees the barrel and he only sees it for an instant. It's not 100% clear what this is, but there's no evidence that it's something other than a firearm. And based on that, you have to pay attention that they do not present the gun or whatever this item may be. They don't have any evidence about its weight or its composition, nothing like that. The defendant never threatens to shoot. Well, there are two bits of evidence that are relative, that are basically oblique to each other. The one evidence is the injury that this item caused, which probably would be if the injury were something less marginal. Let's say if the injury was a fractured skull as opposed to a little indentation on the forehead, there would be very little question that you could infer that the weapon that caused this was dangerous. You may not know whether it was a gun, but you would know that even if it wasn't a gun, it was a dangerous weapon because that involves the third category in Ross, dangerous when used or how it could be used, since it did have that effect. Here I suppose the question is whether this little indentation on the forehead constitutes enough of an injury to make that kind of inference or deduction, that it was dangerous by causing that, since it could be caused by a pencil, you know, presumably. But the other item of evidence here is the glance upward at the barrel, seeing only that portion. It's like, you know, the blind man testing whether what the animal was, what an elephant was by feeling different parts of its body, you know, and coming to different conclusions. Here you have the barrel. And is that enough of a percept to support an inference that it was a gun? And there are various cases that seem to indicate that you don't have to see the whole gun to surmise that it was a gun. So now the question here is, which way are you going?  Are you going with the fact that it would be otherwise a dangerous weapon if the injury were sufficient? I'm saying, A, that it wasn't proved to be a dangerous weapon, and also that the state didn't prove that it was something other than a firearm. And the cases that say, I mean, first of all, in Illinois, there's no presumption that all guns are dangerous, and that's in Ross. And by telling the jury, oh, sorry, that there's no presumption that all guns are dangerous. It's up to the jury to decide. And the way they do that is to decide if you will use. Under what provision are you talking? Under 8.3 or 8.4? The provision that no presumption that all guns are dangerous weapons. What provision are you interpreting by attempting to apply a presumption? I'm not applying a presumption. I know, you're questioning. But if it applied, which provision of the statute are you referring to? I'm talking about 8.3 because that's where dangerous weapons are. Well, 8.3 excludes guns. Correct. And firearms. I'm saying because that state did not prove beyond a reasonable doubt the elements of that. The jury was also instructed that a defendant commits the offense of aggravated vehicular hijacking when they're armed with a dangerous weapon. The instructions never specified other than a firearm. They just said armed with a dangerous weapon. The jury asked for the definition of dangerous weapon, and the court provided a list of Category 1, 2, and 3 weapons from the armed violence statute over both the defense and the state objective. Notably, the state did say that the armed violence listing was statute-specific and didn't apply to the armed vehicular hijacking. Also, at the defense request, the definition from GLAC's law dictionary was given. Now, that armed violence statute's definition of a dangerous weapon does include three categories, each of which involves certain kinds of guns. And one of those categories is a per se category, where it's a certain, I don't have the specific language, but a certain kind of gun is per se considered a dangerous weapon. Others go to its use. So that was part of the court's definition, but then the court also looked at GLAC's law dictionary, which didn't use guns at all. Didn't refer to guns. Correct. So what's your problem? My problem is that the court throws this listing of Category 1, 2, and 3 weapons, gives the jury this listing, which answers the factual question. The jury asks this question of law, the definition of dangerous weapons, which they need to know to make a factual determination of whether McBride was carrying a dangerous weapon other than a firearm. But the court gives them this listing, which doesn't explain how to determine whether the weapon is a dangerous weapon, based under the Ross categories. It just tells them guns are dangerous weapons. Eleven different types of guns are listed in this armed violence statute. That effectively answers the factual question that was unasked by the jury. The court's response went beyond merely defining dangerous weapon. It gives them these examples. It lists these different types. It doesn't make a distinction also between firearms and non-firearms, which the statute requires here. And the problem here is that when the statute was amended in 2000, and it went from just dangerous weapon to having these distinctions between firearm and non-firearm, the IPIs weren't also amended. So the actual instruction given to the jury just said dangerous weapon. So they just made a determination. They were only asked to make a determination of whether it was a dangerous weapon, not whether it was a firearm or not. Had they decided it maybe was a firearm, then that would say that the state did not meet its burden of proof under A3. And the problem here is that we just don't know whether the jury thought it was a firearm or whether they thought it was something other than a firearm. But that assumes that if they decided it was a firearm, which would then permit conviction under A4, that the fact that they didn't enumerate A4 was a fatal variance. Because if it wasn't a fatal variance, why do we care? Either way, they proved the crime. Either it was a dangerous weapon under A3. But if under A3, Category 1 is excluded, right, because Category 1 is per se, it would be included under A4. So A4 would catch the criminal, so to speak, unless having enumerated A3 as the statutory provision and having defined it on that basis, there would be a fatal variance to then prove up A4, which is something you're ducking because you're not claiming a fatal variance. Because they charged it under A3. Well, if it's not a fatal variance, then if they prove A4 when they charge A3, isn't that enough? No, it's not. Under Barnett, there are totally different subsections with different requirements and different sentencing schemes here. They're mutually exclusive. If the state had proven... But there's no preclusion to give the lesser sentence, which was given here. They didn't give the enhanced sentence. They gave the lighter sentence. Because they convicted him, and even the minimus says A3. It all says A3 here. And they're different. And A4 is not a lesser included of A3. It includes this different element, the firearm element. So they can't find him guilty of A4 just because the state... It comes down here to the fact that the state charged him only with A3. It did not pursue a two-con indictment, which they absolutely could have. And to cover all their bases, they probably should have. But they didn't do that here. And by giving the jury this listing of all these Category 1, 2, 3 weapons,  Well, that's a separate argument, isn't it? I mean, one argument is this usurpation, which I frankly don't understand all too well. The other argument is that there's confusion, and creating confusion perhaps to the jury, but worse, perhaps the confusion would be in determining what the jury's findings entailed, what they found based on the fact that you have, perhaps in this proffered definition, a submission of what is in part an A3 submission and in part an A4 submission, and maybe in part something else, which is the Black's Law Dictionary, which probably pertains to A3 and not to A4. The reason it's a problem is because the court is telling the jury that all of these items are dangerous weapons. When the case law on what a dangerous weapon is, an armed vehicular hijacking, it looks to the three categories, and it looks to what the state has proven. So we would be using basically a Nader analysis to see, under those circumstances, where there is a misinterpretation of the applicable law, whether it's harmless beyond a reasonable doubt or not. In this case, it's not harmless beyond a reasonable doubt. Well, but that would be the analysis, wouldn't it? I mean, we would be entitled to say if this was an incorrect instruction on the law, we would be compelled by the U.S. Supreme Court decision, and you would really take a look at whether this instruction error, if it occurred, meant anything. Was it at all different from what was going on here? So basically, if you had an injury that occurred by the use of this item, whatever it was, would it have mattered if it was properly instructed in the first place by the court? In other words, would there be any reasonable possibility that the jury would find that, given the injury that ensued from the use of the item, that the definitional error, if there was one, would have mattered at all? There's two problems with that. One is that the state still has to prove other than a firearm, and we just don't know whether the jury decided that or not because they're given this. But that isn't what you were addressing with your argument. You're addressing the over-inclusion of these items, that the jury could have picked one of these items as what it was and erroneously decided that that weapon was dangerous. And my point to you is, if you take from the evidence that it was dangerous because of how it was used and what injury it caused, it wouldn't make any difference whether there was an instructional error or not, because that would be sufficient. Well, I also have to keep in mind, though, that the categories of weapons don't line up with the Ross categories. They don't exactly line up. They don't make this distinction. The Category 2 weapons in armed violence also includes guns that are presumably loaded. But that wouldn't make any difference under neither, either. Anyway, anything else you'd like to say? Because the state failed to prove all the elements of aggravated vehicular hijacking, this Court should reduce McBride's conviction to vehicular hijacking pursuant to Argument 1. And pursuant to Argument 2, this Court should reverse the demand for a new trial. Thank you, Ms. Filpi. Ms. Katz, other than wanting to deliver this whole oral argument to the State Legislature in the next session. You're going to make it all clear to us. I'm going to try. And there's a lot of questions that have been posed, and I want to answer them all. But I'd like to frame my argument at the outset under the Illinois Supreme Court's recent decision in Washington, because it's the people's position that Washington is dispositive of most, if not all, of what's before this Court. So let me start with the charging decision that was made in this case. This is about the only thing that myself and my opponent agree on, that this case was charged under Subsection A3. And it was done for a very particular reason, and the reason is reflected in point of fact in the record in this case, where the trial judge talks about the fact that the people would be unable to obtain an enhancement. And that is because of the Illinois Supreme Court's decision in Housechild, which came down three months before the indictment in this case. Under Housechild. But Housechild is not new law. Housechild is the law as it was amended before it was held an unconstitutional disproportionality ruling, before Sharp. And once Sharp restored the post-amendment rule, Housechild simply applied what would have been the law in the absence of Walden. My understanding of what Housechild did, of the legal effect of the ruling in Housechild, was that it meant that because the identical elements test could not be withstood with respect to... But the identical elements test was always the traditional rule before you got to the other categories imposed under Walden and its momentary project. Before it was reset to where it was original. I don't disagree with you, Your Honor, but here's the thing. I knew in Housechild that wasn't already in effect all along. And so I don't see why you're looking to that as a bailout when the Sharp was decided in 2006 and your indictment was drawn in 2007. So you already were back to normal in 2007. So what protection do you get from Housechild? Because A4, the provision having to do with when it's a firearm, would not have enabled the people to get the 15, 20, 25, the add-ons. The add-ons were not legitimate things that the people could see. Well, there would be nothing in Housechild that would be any different than what would have existed before Walden. Isn't that right? I'm not disagreeing that the identical elements test was in place... So Housechild is not a bailout. Well, the people have to endeavor in charging a defendant with charging them under a statute that appropriately fits the elements of the offense and that is something that the people can pursue a prosecution and a sentence on. And at the time that this defendant was indicted, we could not get the add-on that was required under A4. Let me ask you, under pre-Walden law, which is what we're now marching under, pre-Walden law, once we had the decision in charge, by making a firearm an element in A4, doesn't that save the statute from being disproportional because it's a different element? A firearm is its own element. That's true. So you're not showing a variance in a statute that involves proof of the same elements? It is. Seeing as my opponent has pretty much entirely conceded that there's no variance problem, I don't really want to take up the gauntlet on her behalf, but to the extent that Your Honor perceives there to be any sort of variance problem... I'm talking about variance for disproportionality purposes, not variance as it would apply to a departure from the indictment in requiring proof. Your Honor, and maybe I'm not being articulate in the way I'm expressing it. A decision was made to charge under A3 because we... Why do we care? You should care because in Washington the Illinois Supreme Court was confronted with a very similar situation where a charging decision was made to charge the defendant under the pre-amended statute, even though the offense was committed post-amendment, because there was a problem at that point with the cross-comparative analysis because of Moss. And the Illinois Supreme Court, when confronted with an issue, two issues, one of them being the variance issue, the other issue being whether or not the people's evidence was sufficient to sustain their burden of proof, said, based on the testimony that was given by the victim in the case, and that was charged even worse than this case because that case was charged... In Washington the charges were drawn during the pendency of the Walden unconstitutionality ruling. So they were drawn with the old statute, the pre-amendment statute involved. Right. Something in this case, there is no question that the indictment was drawn once Sharp restored the reversed Walden under the post-amended statute, which now resumed its constitutionality. So how does Washington bail you out? Because in Washington, and Justice Kilbride's dissent is actually very illustrative of the point here, when the statute... You prefer Justice Kilbride over Justice Bergeron? No, what I'm saying is... I thought I'd get you on record saying that. The dissent makes the point that to the extent that there was some flux in the law and there was a question as to constitutionality of the add-ons and such, that the state was wrongly charging under the pre-amended statute because the effect of the Moss rulings was not to eliminate the offense, it was just to eliminate the add-on. I know, but you're dealing with a dead horse because the pre-amendment statute was temporarily interposed during the pendency of the Supreme Court's ruling that there was disproportionality in the amendment. In the same way that A-4 was not available to us at the time that the court came down with its decision and House Child, which subsequently that problem was eradicated because you couldn't have an armed violence prosecution add-on, you couldn't have the sentence... If it involved the same elements. But my question to you is whether this involves the same elements. The same elements rule was the pre-existing rule before the temporary detour interposed by the Walden unconstitutionality findings. It still left, whether it pre-existed or post-dated, it still left us, and I don't want to belabor the point because I really do have a lot of things I also want to get to, but it's our position that A-4 wasn't available to us. In terms of, I want to answer some particular questions that were asked. The question of can a gun serve as both, my answer is yes. In this case, it's clear, we agree, the defendant was charged with being a dangerous violent. How can it serve as both when A-3 specifically excludes firearms? Because it's questionable because a gun can be a firearm and a gun can also be a dangerous weapon. But when a gun is a dangerous weapon, it's also a firearm if it's a firearm, isn't it? Your Honor, in this case, this gun, it's the people's position, was a dangerous weapon in that it was used as a bludgeon. And again, I'd ask this Court to look at the facts in Washington where you did not even have that. Here you've got the defendant taking a gun. Yes, there's a description that the most predominant piece of it that he sees is the barrel. The gun is taken and it's got sufficient weight to it or force to it in the way that it's used that it leaves a deep bruise on the side of the victim's head and it draws blood. It's the state's position that the proof that was adduced at trial establishes that this gun was used as a dangerous weapon. And the defendant's position is... I don't think it was also loaded. Then it would fit both criteria. Then it could be charged as both. And arguably... Well, if it's chargeable as both, then you do have a disproportionality argument, don't you? No, you don't. Because if the state chooses to go under A-3, he gets a 15-year sentence or whatever it is. But if the state chooses for the very same offense, to go under A-4, they'll get that enhanced sentence of 20 years or whatever. If the state goes under A-4, the state is obligated to prove that it's a firearm in order for the firearm add-ons to occur. But the state can take the same conduct by the same individual and depending whether they like him or not, determine what sentence he's going to pull by designating the number of... But there is the same thing in many, many kinds of cases. For example, when you have a handgun but decide not to try to prove that it's a handgun because it was used as a bludgeon, you avoid the opportunity or the obligation on the trial court to impose the 15-year add-on by simply charging it with using different language for a different section. Which is exactly what Justice Tice said in her concurrence in People v. Pierre White. That's exactly right. There are all sorts of ways. Can creativity come into play? Yes, it can. There's nothing inappropriate about that, and there's nothing that makes the statute disproportionate. So I disagree with Your Honor in terms of the discretion that's left to the state with, of course, the concomitant obligation to always sustain our burden of proof. This case was charged as a dangerous weapon because that gun was used as a bludgeon. That's what happened in this case. Could it have perhaps been charged as a firearm? Maybe it could have. I've tried to explain to the court why that didn't happen. Had it been charged as a firearm, we could have proceeded on that basis as well, which is in marked contrast to the case that the defendant is placing Rely-A-Lon, which is People v. Barnett, which is entirely distinguishable from this case for these reasons. In Barnett, the defendant was charged, in marked contrast to this case, with the use of a firearm. And there was extensive litigation over how this was going to proceed, and both the state and the defense agreed that it was going forward on one basis and one basis only, and that was firearm, and it was charged as firearm, not as dangerous weapon. The state sought a special verdict for it, asking that the jury come back and find that it was a firearm. And the jury, lo and behold, came back and said, you know what, no, it's not a firearm, which caused the reviewing court, the appellate court, and the third district to look at this and say, there's only one way that this can be construed, and that is as an acquittal because there was but one charge placed before that jury, everybody made a charging, the state made the charging decision, the defendant didn't want a lesser included offense, this is how we're proceeding on this thing. Well, it's kind of like you take your lumps if you don't get that. What case are you relying on that would permit A-4 to fall away in favor of A-3 when a handgun is used as a bludgeon? Are you referring to Ligon? Is that the case you're relying on? I wasn't specifically referring to a case. And I have to apologize, I did not write the briefs in this case, so I know that Ligon sets out the different forms, the different manners in which something can be considered to be a dangerous weapon, I have that much familiarity to be able to speak on that basis of it, because Ligon, the two-wit, was two-wit a bludgeon, not two-wit a handgun. Anything that follows the two-wit is surplusage. That's the people's position on this. And I believe Collins is the case that we rely on in our brief to support that proposition. We don't have to specify. And that same argument was made in Washington. What happens when you do is the question. What happens when you do is you have a case where the defendant here was charged with a dangerous weapon and he used a dangerous weapon, and to suggest that somehow it can be anything but a gun is just counterintuitive. I mean, so we were supposed to just say some undesignated object, he took the object and then he used it? Wouldn't that have been the smarter thing to do? Because that way you could say, we don't know whether it was a gun or not, but we're sure that it was dangerous. We don't believe we have to run away from the fact that it's a gun, because a gun is not necessarily synonymous with a firearm. Okay, why don't you get into the adjunct instruction? Okay. With respect to the instructions that were given in this case. I take it that's okay with our presiding justice? We cite a number of cases on our brief where the definition that was prior, when a jury asks a question on a question of law, the judge is supposed to respond to that question. A two-hour conference transpired in which various options were considered. At the end of the day, what the defendant wanted, which was something that did not discuss firearm, was before that jury. And the definition that more or less parallels the different ways in which something can be a dangerous weapon. The armed violence definition was also put before that jury. But doesn't the armed violence definition say, words to the effect, that a dangerous weapon is, in Category 1, a firearm. No, a gun. A gun. It doesn't say firearm. A gun. Nothing more. A per se definition. Once it determines that it's a gun. Okay. Now, how do we know that the jury didn't follow that without looking for any other indicia of dangerousness? And if that is the case, what consequences does that have? If the jury were simply to convict this guy because they think that that barrel was a gun that fit Category 1 without thinking about how dangerous it is in any other respect. I think it would have been perfectly fine for them to think that and make that finding. But I think that if they made that finding, would that hold up in view of the charging instrument here? Yes. And in view of Washington, where the jury found. Let's leave Washington out of this because we're going to go in circles. So see if you can avoid that. Because I don't agree with you on how you're interpreting this. I understand. Can you do that? Or is that my being too draconian? No, absolutely not. I've never been accused of that before. No, that's fine. The evidence was that it was a gun. The jury heard that a gun, and they didn't hear about any per se rule, and they didn't hear about because it has to be. They were given several ways in which an object could be used as a dangerous weapon. And in this case, it was, and you have overwhelming evidence, supporting the fact that the defendant committed this offense in a pre-2000 world and a post-2000 world. He committed the offense of aggravated vehicular hijacking. That jury was not coerced. Is there a harmless error here? Absolutely. If this court were to find that there was any impropriety in the court relying on. Let me just say one more thing, though. I would like to cite a case, which is cited in our brief, which is the case of People v. Hawkins, involving an aggravated kidnapping with a dangerous weapon charge, where this very same instruction was given. And so it's our position, this is not without precedent. There are cases cited in our brief. I understand that some of them are pre-amendment, pre-separation of dangerous weapons versus firearms, but that case is not. So it's our position that the instruction was absolutely properly given, that it gave clarification for the jury, that the jury had a lot of things that they could turn to, including that proper black's law dictionary definition, and that even if this court should find either that there shouldn't have been a response or that any portion of the response that was given was improper, it's the people's position that there is absolutely no prejudice that stemmed from that. It is absolutely harmless. Even if you want to apply a Chapman standard of harmless beyond a reasonable doubt, it certainly meets that criteria. That criteria is met by a barrel that leaves a little indentation with some blood on somebody's forehead. Yes. That's the sum total of this overwhelming evidence. The overwhelming evidence is. That you are proffering here. Well, Your Honor, I mean, that's the evidence having to do with a particular usage, but the evidence of guilt in this case is also. Nobody's disputing guilt. The question is whether he's guilty for 12 years or guilty for 20 or whatever. There was no add-on in this case. No, I understand. No, but the difference is a sentence between vehicular hijacking and aggravated vehicle. Yes. That's what we're talking about. Yes, admittedly. Yes, I'm sorry. I didn't. For these reasons, and those stated in the people's brief, as well as in the response to the defendant's motion to cite additional authority, we ask that this court affirm the defendant's conviction. I was wondering whether I'd ever see you on your feet here. I'm usually in Springfield, Your Honor, but it's nice to be here. It's nice to be back. It's been a while. Thank you. I'd like to point out about the injury for Chris Hall. When asked if he suffered any injuries from the weapon, he said that he'd suffered a deep bruise. He didn't say anything about the blood. He did say, however, that the responding officer noticed that there was some blood on his head. However, the state was unable to prove, or there's no evidence proving that that blood came from the gun. It could have come from when he was laying over the trash cans or another part of this incident. But is that something that there was enough for a jury to make its call on? Are you saying that there wasn't enough data to support a jury verdict here on that issue? On whether the gun was used as a dangerous weapon. Yeah. I mean, there wasn't enough here for a jury to conclude that the blood resulted from the use of the weapon. He was asked to lie over trash cans. I mean, this was a 56-year-old man. Is that an overstatement? He's very young. He is very, very young. But there is evidence in the record that he may have had some health problems or difficulties getting around. Because that's why he was initially asked to lay on the ground. Was this blood found in the spot where this weapon was in contact with the defendant? The record is unclear on that. It just says on his head. Secondly, I wanted to just mention Hawkins, which the state referred to and said that there's precedent for giving armed violence this listing for these cases. And that's not exactly true. Hawkins is an aggravated kidnapping case. And the statutory language in Hawkins is markedly different from that in aggravated vehicular hijacking because it says, a dangerous weapon other than a firearm, as defined in Section 33A1. And that's just very different from what we have here where the statute only says dangerous weapon while armed with a firearm. Gerard, any other questions? Thank you. Thank you both for a very engaging argument, well-prepared, well-delivered and fine briefs. We'll take it under advisement and we will issue a ruling in due course. Thank you. We're in recess.